UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22316-CIV-SCOLA/O'SULLIVAN

DANIEL FISHER,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## ORDER

THIS MATTER comes before the Court on the Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63, 12/7/12) and the Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91, 2/21/13). Having reviewed the applicable filings and the law, it is

ORDERED AND ADJUDGED that the Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63, 12/7/12) is **GRANTED in part and DENIED in part** and that the Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91, 2/21/13) is **DENIED**.

## BACKGROUND

The complaint alleges that:

> On or about October 28, 2010, the Plaintiff, DANIEL FISHER, while exercising due care and caution, was seriously injured when he slipped and fell in [the steam room][1] which accumulated excessive moisture

---

[1] The Court allowed the plaintiff to amend the complaint by interlineation to substitute the words "steam room" for "sauna" in certain paragraphs of the Complaint including paragraph 6. See Order Granting Motion to Amend Complaint (DE# 57, 11/16/12).

> and/or other foreign substance, and improperly [sic] maintained [the steam room] which did not have either handrails, warning signs, or skid-proof flooring surfaces.

Complaint (DE# 1 at ¶6, 6/27/11) (footnote added). At the time of the accident, the plaintiff was a passenger on board the defendant's cruise ship. Id. at ¶5.

The plaintiff retained Alan R. Caskey, Ph.D. as a liability expert. The defendant filed the instant motion seeking to preclude Dr. Caskey from testifying at trial. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63, 12/7/12). The plaintiff filed his response in opposition on January 23, 2013. See Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82, 1/23/13). The defendant filed its reply on February 4, 2013. See Defendant's Reply Memorandum of Law in Support of its Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 86, 2/4/13). The plaintiff filed a request for a hearing on this issue. See Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91, 2/21/13).[2] This matter is ripe for consideration.

In the instant case, the plaintiff fell in the steam room of the defendant's cruise

---

[2] The plaintiff seeks a hearing on this issue because, according to the plaintiff, the defendant "in its motion and reply (D.E. 86) memoranda, may have misled the Court concerning Dr. Caskey's qualifications and opinions . . . ." See Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91, 2/21/13). The plaintiff's request for oral argument is akin to a surreply wherein he goes on to address some of the defendant's alleged misconceptions concerning Dr. Caskey's testimony. The undersigned finds that oral argument is unnecessary in resolving the issues before this Court. The undersigned will consider the clarifications offered by the plaintiff in his motion for hearing and read the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (DE# 81, 1/23/13) as requested in the motion for hearing.

ship. See Complaint (DE# 1 at ¶6, 6/27/11). On the day of the accident, the plaintiff went to the ship's steam room[3] and laid down on the second (top) tier bench on a towel. See Deposition of Daniel Fisher (DE# 63-5 at 12, 12/7/12).[4] He remained on the bench for approximately 15 minutes and fell off the bench when he attempted to get up. Id. During his deposition, the plaintiff related the manner in which he attempted to get up as follows:

> Q.   Describe for me how you got up.
>
> A.   There was no handles so I pushed myself up from the bottom, you know, the surface that I was lying on and in a way on the wall to try to swing my legs over and that's when it hit.
>
> Q.   You pushed off the wall?
>
> A.   I was pushing, trying to get purchase [sic] . . . from the surface of the wall and what I was lying on.
>
> ***
>
> Q.   And as you were pushing off the wall with your hands, what were you doing with your feet?
>
> A.   Well, I was trying to swing them over.
>
> Q.   To go down to the first two?
>
> A.   Yes.
>
> Q.   And then what happened?
>
> A.   Then I launched myself. Apparently, the sweat soaked through the

---

[3] The plaintiff used the word "sauna" in his deposition. See Deposition of Daniel Fisher (DE# 63-5 at 12, 12/7/12). The parties appear to use the words "sauna" and "steam room" interchangeably.

[4] The undersigned will use the page numbers assigned by the Court's CM/ECF system as opposed to the page numbers printed on the deposition transcript.

>   towels and they were sort of sticking and then all of a sudden they broke free and I hit the floor.
>
>   ***
>
>   Q.   You were not sitting in a sitting position at the time that you slipped?
>
>   A.   No.
>
>   Q.   You were rising from a laying position?
>
>   A.   Correct.
>
>   ***
>
>   Q.   So your feet did not slip, your feet did not cause you to fall?
>
>   A.   No, because I didn't get to that stage.
>
>   Q.   You slipped because your back had slipped off the top tier –
>
>   A.   Yes.

Id. at 12-13. The complaint alleges that the plaintiff's negligence claim arose in part from the defendant's "[f]ailure to provide handrails and/or other devices which [sic] to support/assist one getting up and dismounting from [steam room] benches/steps" and "[f]ailure to provide non-skid surfaces for such an area." See Complaint (DE# 1 at ¶9, 6/27/11).

## STANDARD OF REVIEW

The defendant seeks to exclude the expert opinion testimony of Dr. Caskey under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 1, 12/7/12). District courts have broad discretion in deciding to admit or exclude expert testimony. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997). "Federal Rule of

4

Evidence 702, as explained by the Supreme Court in Daubert . . . and its progeny, controls determinations regarding the admissibility of expert testimony." City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote and citation omitted). Under Daubert and Rule 702, the Court serves as a gatekeeper to the admission of scientific evidence. Quiet Technology DC-8 v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (citing Daubert, 509 U.S. 579, 589 (1993) and McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)); Rink v. Cheminova, 400 F.3d 1286, 1291 (11th Cir. 2005). In ruling on the admissibility of expert testimony under Rule 702, the Court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand evidence or to determine a fact in issue.

Quiet Technology, 326 F.3d at 1340-41 (citing City of Tuscaloosa, 158 F.3d at 562 (other citation omitted). "While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and the courts must take care not to conflate them." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citing Quiet Technology, 326 F.3d at 1341). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or defendant in a civil suit, or the government or the accused in a criminal case." Id.

**ANALYSIS**

**1.      Qualification**

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address at trial. City of Tuscaloosa, 158 F.3d at 563. Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Inv., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 660 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citing Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations and internal quotation marks omitted; alteration in original).

In the instant case, the defendant argues that Dr. Caskey is unqualified to render opinions regarding the construction, design, operation and maintenance of the steam room on board the subject vessel. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 3, 12/7/12). According to the defendant, "Dr. Caskey's area of expertise does not align with the analysis at issue." Id. The defendant notes that Dr. Caskey is not an architect and has no experience designing large, ocean-going vessels. Id. at 4.

6

The defendant emphasizes the fact that the steam room in question was onboard a ship and that Dr. Caskey has never been inside the steam room of any cruise ship, has never been on board the subject vessel[5] and has never served as an expert on an injury in a steam room. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 4, 12/7/12). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001)). Here, there is no evidence that the accident in question relates to conditions unique to maritime accommodations. See Cook v. Royal Caribbean Cruises, Ltd., No. 11-20723-CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) (on a motion in limine, allowing some evidence of land based recommendations and guidelines to be introduced at trial noting that "the Eleventh Circuit [has] cited with approval cases that appl[y] the ordinary, reasonable landowner care standard to shipowners where the shipboard hazard was of the type also found on land.") (citing Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1321-22 (11th Cir. 1989)).

Dr. Caskey is a park and recreation planner and safety consultant. See Curriculum Vitae of Alan R. Caskey, Ph.D. (DE# 63-2 at 1, 12/7/12). He holds a Ph.D. in Recreation and Park Administration. Id. During his deposition, Dr. Caskey testified that he has "along with the mechanical engineers and architects working as a team

---

[5] Although Dr. Caskey did not personally inspect the area where the plaintiff fell, Dr. Caskey "had a videographer take pictures and video footage of the facility." See Deposition of Alan Caskey (DE# 63-4 at 7, 12/7/12).

designed both a dry sauna and a wet steam room and a couple of times when [his] clients were in the process of purchasing a country club evaluated not only the recreation facility but also the locker room facilities with the dry saunas and wet steams." See Deposition of Alan Caskey (DE# 63-4 at 3, 12/7/12).[6] Dr. Caskey was also the individual responsible for recommending the tile used on the project involving the mechanical engineers and architects. Id. at 3-4. The undersigned is satisfied that Dr. Caskey meets the minimum qualifications to render an opinion regarding the steam room onboard the subject vessel under the relatively low qualifications threshold of Daubert.

The defendant also takes issue with what it perceives to be Dr. Caskey's lack of preparation in this case. The defendant notes that Dr. Caskey never spoke to the plaintiff in person or on the telephone, did not read the plaintiff's deposition, lacked knowledge about how the plaintiff fell and did not conduct any interviews in this case. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 4-5, 12/7/12). The defendant points out that Dr. Caskey's expert report referenced a "dry sauna" whereas the incident in question occurred inside a

---

[6] The defendant maintains that "Dr. Caskey's work with engineers on a project 25-28 years ago does not make him an expert in engineering principles." Defendant's Reply Memorandum of Law in Support of its Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 86 at 2, 2/4/13). At trial, Dr. Caskey will not be providing testimony on engineering principles. He will be testifying that the failure to include handrails/handholds contributed to the plaintiff's accident. To the extent that the defendant believes that Dr. Caskey would make a better expert had he worked on additional projects or more recent projects, the defendant may address this issue on cross-examination. See Clena Inv., Inc., 280 F.R.D. at 660 (noting that "objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.") (citation omitted).

steam room. Id. at 4. With respect to the use of the words "dry sauna" in the expert report, Dr. Caskey explained during his deposition that:

> at the time [he] prepared the report, in the initial contact they called it a dry sauna, but when [he] looked at it in the pictures of it with the tile, [he] thought it was a steam room. [He] did not see any type of a dry sauna heater in it.

Id. at 3. Thus, the undersigned is unpersuaded that the misuse of terminology is grounds for disqualifying Dr. Caskey as an expert in this case. To the extent the defendant believes Dr. Caskey could have done more in developing and supporting his opinions, the defendant is free to bring this information out on cross-examination at trial. See Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (stating that "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration . . . . It is the role of the adversarial system, not the court, to highlight weak evidence.") (emphasis in original) (internal quotations and citations omitted).

**2.     Reliability**

The second admissibility requirement is reliability. Daubert, 509 U.S. at 589. Reliability is different than believability or persuasiveness, which remains an issue for the trier of fact. Rink v. Cheminova, Inc., 400 F.3d 1286, 1293 n. 7 (11th Cir. 2005). To evaluate the reliability of scientific expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique and (4) whether the technique is

generally accepted in the scientific community. These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion. Frazier, 387 F.3d at 1261-62.

The plaintiff summarizes Dr. Caskey's opinions as follows:

- According to industry standards for the safe operation of steam rooms, Carnival's steam room should have been equipped with handrails/handholds. The lack of any handrails in the steam room likely contributed to Fisher's accident. Caskey Dep. 44:11; 56:11-14, 21-23.

- The tiles in the steam room were 5 years old, including the tiles on the bench from which Fisher slipped. According to industry standards for the safe operation of steam rooms, some of the tiled surfaces in the steam room should have had non-slip adhesive strips attached to them to increase their non-slip characteristics. The lack of any non-slip strips likely contributed to Fisher's accident. Id. at 48:9-50:5; 56:11-14, 21-23.

- Carnival violated the steam room manufacturer's maintenance requirements, by failing to rinse the surfaces on which guests sat or reclined as frequently as it should have. . . .

- According to industry standards for the safe operation of steam rooms, Carnival's steam room should have been equipped with a clock, so that guests, who tend not to bring watches into steam rooms, could monitor how long they were in the steam room. Monitoring the time is important because it is unsafe to stay in a steam room much longer than 15-20 minutes. But the lack of a clock played no role in Fisher's accident, as Fisher believes he spent only about 15 minutes in the steam room.

Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82 at 2, 1/23/13).

The undersigned will address the reliability factor with respect to the first and second opinions only. The third and fourth opinions should be excluded on other

grounds and thus, it is unnecessary to address the reliability factor as to those opinions. The third opinion should be excluded because this opinion was omitted from the expert disclosure, Dr. Caskey's report and Dr. Caskey's deposition testimony. See discussion in Section 4, infra. The fourth opinion is irrelevant as there is no record evidence that the amount of time the plaintiff spent in the steam room contributed to his fall. Moreover, it does not appear that the plaintiff will seek to introduce the fourth opinion, the failure to include a clock in the steam room, at trial. See Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82 at 4, 1/23/13).

      Here, the defendant argues that Dr. Caskey's opinions are unreliable because he applied the wrong standard of care. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 7, 12/7/12). The defendant notes that at his deposition, Dr. Caskey testified that he applied the "highest degree of care" standard as opposed to the governing standard which is "ordinary reasonable care under the circumstances." Id. (citing Keefe, 867 F.2d at 1322). The plaintiff disputes the defendant's argument that Dr. Caskey applied the wrong standard of care in rendering his opinions. The plaintiff notes that Dr. Caskey was quoting a passage from a book by Betty Van Der Smissen in the portion of his deposition where he refers to the "highest degree of care." See Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82 at 8, 1/23/13). The plaintiff argues that "if one examines the substance of [Dr.] Caskey's opinions, and the foundation for those opinions, rather than the 'highest-degree-of-care' label taken from Van Der Smissen, one sees that [Dr.] Caskey has not

11

in fact applied some heightened standard of care here, but has simply applied the 'reasonable-care-under-the-circumstances' standard." Id.

The undersigned has reviewed Dr. Caskey's deposition testimony in its entirety and notes that Dr. Caskey clearly states that he would impose this "highest degree of care" on the vessel owner:

> Q. Okay. So when you're assessing Carnival's standard of care, is that the standard that you're using in your analysis?
>
> A. No. I'm using what the Court used in saying that the **highest degree of care** for its patrons consistent with the safe operation of the vessel.
>
> Q. But is that the standard of care that you yourself are using to formulate your opinions? You're applying that standard from the case that you referenced to the facts in this case?
>
> A. **I'd say that that's the standard of care that I'd apply, yes.**

See Deposition of Alan Caskey (DE# 63-4 at 9, 12/7/12) (emphasis added).

The defendant argues that "[a]n expert that does not know the operative standard of care under United States Supreme Court precedent should not be permitted to opine on whether Defendant satisfied the duty of care." Defendant's Reply Memorandum of Law in Support of its Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 86 at 5, 2/4/13). In the instant case, Dr. Caskey will not be testifying on the appropriate standard of care. He will be testifying as to the need for and feasability of using handrails/handholds [7] in a steam room. The addition of these items to a steam room are simple modifications which fall well below the "highest

---

[7] Whether Dr. Caskey will be permitted to testify at trial as to the use of adhesive strips will be discussed separately.

degree of care" possible. Thus, Dr. Caskey's adherence to a different standard does not preclude him from testifying in the instant case where his opinions on the use of handrails/handholds do not fall under that standard.

The defendant further argues that the plaintiff has failed to show that Dr. Caskey's methodology is scientifically valid:

> Dr. Caskey did not conduct any scientific testing. (Caskey Depo., p. 35). He explained his methodology: he reviewed the facts of the case as given to him by Plaintiffs counsel, the photographs of the steam room, the complaint and answers to interrogatories, and compared them to the "recommendations in the references and journals and my background, experience, education and came to the conclusions that I did." (Caskey Depo., p. 36).

See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 9, 12/7/12). The defendant argues that this method cannot be tested, subject to peer review and publication and the rate of error is unknown. Id. The plaintiff explains that he:

> would like to call [Dr.] Caskey to testify only about the need for handrails and non-slip adhesive strips in a steam room whose tiles are 5 years old (and it turns out have been improperly cleaned for 5 years[)] . . . [Dr.] Caskey is not going to testify to any sophisticated or complex science – he is simply going to testify that industry standards, as reflected in the numerous sources [Dr.] Caskey has cited and relied upon, call for handrails and non-slip strips in this steam room.

Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82 at 4, 1/23/13).

In Bussey-Morice v. Kennedy, No. 6:11-CV-970-Orl-36GJK, 2012 WL 7992419, at *3 (M.D. Fla. Dec. 28, 2012), the defendant sought to exclude the plaintiff's police practices expert on the ground that he used an unreliable methodology in formulating his opinions. The expert "use[d] his experience in police practices and procedure,

13

including select court cases, and evaluate[d] the facts in [that] case to form his opinions." Id. In denying the motion to exclude the expert, the district court noted that "[t]here [wa]s nothing inherently unreliable about this methodology" and that "similar testimony has been rendered before this Court in the past." Id.

In the instant case, Dr. Caskey formulated his opinions by comparing the standard of care derived from various publications and his knowledge of the regulations and standards with the facts of this case. See Expert Report (DE# 63-3 at 2, 12/7/12). During his deposition, Dr. Caskey explained his methodology as follows:

> [T]here are some standard features that are part of a steam room . . . .These are pretty much the standard operating procedures issued in various journals and various books.
>
> Many times the sauna and the steam and the whirlpool are thrown in with the swimming pool regulations and are covered by the various licensing by the building codes in municipalities and public agencies.
>
> **So in comparing those to the facts as I've been related to, have formulated the opinions based upon a comparison to the accepted standard of care and operating procedures for the steam, sauna, and general spa area.**

See Deposition of Alan Caskey (DE# 63-4 at 8, 12/7/12) (emphasis added). The undersigned finds that Dr. Caskey's procedure satisfies the reliability prong. The defendant may point out the perceived flaws in the literature or regulations relied upon by Dr. Caskey on cross-examination. "[T]he weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." Vision I Homeowners Ass'n, 674 F. Supp. 2d at 1325 (quoting Jones v. Otis Elevator Co., 861 F. 2d 655, 662 (11th Cir. 1988).

The defendant also seeks to exclude Dr. Caskey's opinion regarding the

14

application of adhesive strips to certain tiled surfaces in the steam room. The defendant notes that Dr. Caskey's opinion regarding the placement of adhesive strips on the lower step and the floor of the steam room would not have affected the plaintiff's fall in this case. See Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 9, 12/7/12). Here, it is undisputed that the plaintiff was laying down when he attempted to get up and fell off the top bench in the steam room. See Deposition of Daniel Fisher (DE# 63-5 at 12-13, 12/7/12). Thus, the plaintiff's fall was not caused by stepping on a slippery tile.

The plaintiff agrees that the use of adhesive strips on the floor of the steam room would not have affected the fall in the instant case. See Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91 at 1-2, 2/21/13) (agreeing that the lack of non-slip adhesive strips on the floor of the steam room "has nothing to do with this accident."). Nonetheless, the plaintiff seeks to use Dr. Caskey to introduce testimony that adhesive strips should have been used on or around the bench. Id. at 2. The problem with this argument is that Dr. Caskey did not render this opinion during his deposition or in his expert report. The plaintiff relies on the following deposition testimony as evidence that Dr. Caskey recommends the use of adhesive strips on the surface of the bench where the plaintiff fell:

> Q. Okay. Is it your opinion that the absence of nonskid adhesive strips in this case contributed to Fisher's incident?
>
> A. I believe they would on the two benches. He indicated that that's where he started to fall. But if he had the adhesive strip and handrail to descend, he shouldn't have fallen.

See Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude

Plaintiff's Expert (D.E. 63) (DE# 91 at 2, 2/21/13) (quoting Deposition of Alan Caskey (DE# 63-4 at 13-14, 12/7/12)). However, a complete reading of Dr. Caskey's deposition testimony shows that he was suggesting that the adhesive strips be added to the step (or lower bench) leading up to the top bench and not the top bench itself:

> Q. Is it your opinion then that the nonskid strip should have been all across the top of the bench?
>
> A. No. They would have just needed to be near the handrails so that an individual when they grabbed the handrail and then began to descend would be able to **stand on the strips** and descend the bench.
>
> Q. But is anybody going to be standing on the top bench?
>
> A. **I don't think they can stand on the top bench**, but the first bench they can.
>
> **Q. So the adhesive strip should have been placed on the step down?**
>
> A. Correct.
>
> **Q. And then the floor?**
>
> A. Correct.
>
> ***
>
> Q. So my question is: How did the absence of nonskid adhesive strips on the floor of the steam room cause him to slip from the top bench?
>
> A. Oh, I'm sorry. **It didn't cause him to slip from the top bench**. But you said if I was putting strips – I understand your question as if I was recommending how it would be changed or how it should have been is that **I would have also had strips on the floor.**

Deposition of Alan Caskey (DE# 63-4 at 14, 12/7/12) (emphasis added). The undersigned's conclusion that Dr. Caskey was referring to the use of adhesive strips on

16

the floor and the lower bench of the steam room is supported by Dr. Caskey's expert report wherein he opines that the defendant deviated from the standard of care because it "did not provide adhesive strips on the tile to provide safe **foot** traction." See Expert Report (DE# 63-3 at 3, 12/7/12) (emphasis added). It appears that the confusion regarding Dr. Caskey's opinions about the use of adhesive strips derives from the fact that there was a top bench (from which the plaintiff fell) and a lower bench on which the plaintiff needed to step on to reach the top bench. See Photograph of Bench (DE# 63-1, 12/7/12). During his deposition, Dr. Caskey recommended that an adhesive strip be placed on the lower bench for foot traction and agreed that no adhesive strip was needed on the top bench because no one is going to be stepping on that bench. See Deposition of Alan Caskey (DE# 63-4 at 14, 12/7/12).

The undersigned finds that Dr. Caskey should not be permitted to testify about the use of adhesive strip on the floor of the steam room because it is not relevant to the manner in which the plaintiff fell in the instant case and Dr. Caskey should not be permitted to testify about the use of adhesive streams on the top bench of the steam room because he did not render this opinion in his expert report or in his deposition testimony.

**3.      Assistance to the Trier of Fact**

The third requirement for admissibility is that the expert testimony must assist the trier of fact. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

17

The defendant argues that Dr. Caskey's testimony would not be helpful to the jury because his opinions are "based on Plaintiff's counsel's version of the facts and photographs, and conclude that the defendant breached a legally rejected standard of care." Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63 at 12, 12/7/12).

Dr. Caskey's testimony concerning the use and feasability of installing handrails/handholds in a steam room is outside the common knowledge of the average juror. As a result, expert testimony in this area would assist the jury in deciding factual issues at trial. FED. R. EVID. 702. For this reason, the undersigned concludes that Dr. Caskey's testimony concerning handrails/handholds would be useful to the trier of fact.

## 4. Dr. Caskey's Opinion Regarding the Maintenance of the Steam Room

The defendant also seeks to exclude Dr. Caskey's opinions which were not contained in the expert disclosure, Dr. Caskey's report or in Dr. Caskey's deposition testimony. See Defendant's Reply Memorandum of Law in Support of its Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 86 at 6-7, 2/4/13). During his deposition, Dr. Caskey testified that he did not have "any evidence one way or the other to say whether [the defendant's staff] had done a good job or had not done their job as far as the day-to-day maintenance" of the steam room. See Deposition of Alan Caskey (DE# 63-4 at 15, 12/7/12). In his response, the plaintiff indicates that Dr. Caskey's opinions would include the following:

> Carnival violated the steam room manufacturer's maintenance requirements, by failing to rinse the surfaces on which guests sat or reclined as frequently as it should have. **(Caskey did not offer that opinion at his deposition because he had not yet been provided Carnival's answers to interrogatories, in which Carnival disclosed**

> **that it cleaned the steam room only once a day, no matter how many people used the steam room.)**[.]

Plaintiff's Response in Opposition to Defendant's Motion in Limine (D.E. 63) to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 82 at 2, 1/23/13) (emphasis added).

The defendant opposes expert testimony on this theory of liability and notes that the "[p]laintiff learned of the facts regarding [the] maintenance [of the steam room] before Dr. Caskey's deposition" and that it "will be prejudiced if [the p]laintiff is permitted to slide new liability theories in at this late stage, when discovery is closed and [the d]efendant's dispositive motion is pending." Id. at 7.

The undersigned agrees with the defendant that Dr. Caskey should be precluded from rendering any opinions at trial that the maintenance of the steam room contributed to the plaintiff's fall. "[A]n expert report must be complete such that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and . . . the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" Dyett v. North Broward Hosp. Dist., No. 03-60804, 2004 WL 5320630, * 1 (S.D. Fla. Jan. 21, 2004) (quoting Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998) (citation omitted)). Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or the witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "'[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" Dyett, 2004

WL 5320630 at *2 (quoting Salgado, 105 F.3d at 742).

Here, the plaintiff learned of the maintenance schedule during the deposition of Spa Manager Nadya Slabber on February 13, 2012, prior to Dr. Caskey's deposition on March 19, 2012. See Defendant's Reply Memorandum of Law in Support of its Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 86 at 7, 2/4/13). The defendant also responded to interrogatories about the maintenance schedule and emailed those responses to the plaintiff's counsel on March 16, 2012. Id. Dr. Caskey did not render an opinion about the improper maintenance of the steam room in his expert disclosure, in his report or during his deposition. Accordingly, Dr. Caskey may not testify that "Carnival violated the steam room manufacturer's maintenance requirements, by failing to rinse the surfaces on which guests sat or reclined as frequently as it should have" at trial.

## CONCLUSION

For these reasons, the Defendant's Motion in Limine to Exclude Plaintiff's Liability Expert Opinion Testimony (DE# 63, 12/7/12) is **GRANTED in part and DENIED in part**. Dr. Caskey may testify as an expert at trial concerning the use of handrails/handholds in steam rooms and how the failure to include these items likely contributed to the plaintiff's accident. The Plaintiff's Request for Hearing on Defendant's Motion in Limine to Exclude Plaintiff's Expert (D.E. 63) (DE# 91, 2/21/13) is **DENIED**.

DONE AND ORDERED in Chambers, in Miami, Florida, this **17th** day of May, 2013.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge Scola
All Counsel of Record